KENNON v. SCHLESINGER et al.

No. 11439.

Court of Civil Appeals of Texas.
San Antonio.

Aug. 23, 1944.

Rehearing Denied Sept. 20, 1944.

George L. Conger, Leonard Brown, and W. H. Kennon, all of San Antonio, for appellant.

Johnson & Rogers and Geo. R. Thomson, all of San Antonio, for appellees.

PER CURIAM.

This suit was brought by King Kennon, appellant, against the Housing Authority of the City of San Antonio and the Board of Commissioners thereof. Kennon contends that he was appointed Secretary and Executive Director of said authority for a term of office expiring on February 20, 1945, and sought a decree that until said date he is entitled to exercise the functions and to be paid the emoluments of said office.

The judgment rendered recites that: "* * * A ruling on the exceptions presented and urged by the defendants was reserved until the final decision, and after hearing the evidence and argument of counsel, the plaintiff requested and was granted leave to file a trial amendment and to introduce further evidence, and the Court, after hearing said additional evidence on the 18th day of April, 1944, and at the conclusion of all the evidence, is of the opinion that the plaintiff is not entitled to any relief prayed for against the defendants, or either of them, and the relief prayed for by the defendants should be granted, and that said exceptions of the defendants should be sustained."

These recitals were followed by orders that Kennon take nothing by reason of his suit, and that he be enjoined and restrained from exercising, or attempting to exercise, the duties and functions of the office of Secretary and Executive Director of the Housing Authority of the City of San Antonio.

The record does not disclose a request on the part of appellant to amend his pleadings after the exceptions directed against them

were sustained by the trial court. Trial was to the Court without a jury and ample opportunity afforded to the litigants to offer such evidence as they desired. We are of the opinion that under the undisputed facts of the record appellant was not entitled to recover as prayed for in his petition, and there is consequently no necessity for discussing the exceptions directed against the pleadings of appellant.

The Housing Authority of San Antonio is a public corporation created under and by virtue of the Housing Authorities Law. Article 1269k, Vernon's Ann.Civ.Stats.

This law vests the power of each authority created thereunder in five commissioners, Article 1269k, Sec. 5, appointed by the mayor of a city whose governing body has by proper resolution declared that there is a need for an authority to function in said city. Article 1269k, Sec. 4.

Article 1269k, Sec. 5, in part provides: "The powers of each authority shall be vested in the commissioners thereof in office from time to time. Three (3) commissioners shall constitute a quorum of the authority for the purpose of conducting its business and exercising its powers and for all other purposes. Action may be taken by the authority upon a vote of a majority of the commissioners present, unless in any case the bylaws of the authority shall require a larger number. The Mayor shall designate which of the commissioners appointed shall be the first chairman, but when the office of the chairman of the authority thereafter becomes vacant, the authority shall select a chairman from among its commissioners. An authority shall select from among its own commissioners a vice-chairman, and it may employ a secretary (who shall be executive director), technical experts, and such other officers, agents, and employees, permanent and temporary, as it may require, and shall determine their qualifications, duties, and compensation. For such legal services as it may require, an authority may call upon the chief law officer of the city or may employ its own counsel and legal staff. An authority may delegate to one or more of its agents or employees such powers or duties as it may deem proper."

. Section 8 of the Act (Article 1269k) declares that a Housing Authority is a public body corporate and politic, exercising public and essential governmental functions. An authority under the law is also a business institution. It is empowered to acquire control over dwellings, housing accommodations and properties, and operate the same in order to carry out and accomplish the purposes of the Act of the Legislature.

The Housing Authorities Law recognizes the right of each particular authority created thereunder to adopt and place into effect by-laws for its government and operation.

The by-laws of the Housing Authority of San Antonio, under Article II, styled Officers, contain the following provisions deemed pertinent here:

"Section 1—Officers. The officers of the Authority shall be a Chairman, a Vice-Chairman and a Secretary (who shall be Executive Director). * * *

"Section 4—Secretary. The Secretary shall keep the records of the Authority, shall act as secretary of the meetings of the Authority and record all votes, and shall keep a record of the proceedings of the Authority in a journal of proceedings to be kept for such purpose, and shall perform all duties incident to his office. He shall keep in safe custody the seal of the Authority and shall have power to affix such seal to all contracts and instruments authorized to be executed by the Authority.

"He shall have the care and custody of all funds of the Authority and shall deposit the same in the name of the Authority in such bank or banks as the Authority may select. The Secretary shall sign all orders and checks for the payment of money and shall pay out and disburse such moneys under the direction of the Authority. Except as otherwise authorized by resolution of the Authority, all such orders and checks shall be countersigned by the Chairman. He shall keep regular books of accounts showing receipts and expenditures and shall render to the Authority at the first regular meeting after the 15th day of the month, an account of the financial condition of the Authority in the same form as is furnished to the USHA, together with a report of such transactions of importance as are not contained in the Minutes of the Authority and of which the Commissioners of the Authority have not been previously advised in writing. He shall give such bond for the faithful performance of his duties as the Authority may determine. * * *

"Section 5—Executive Director. The Secretary shall be the Executive Director

of the Authority and shall have general supervision over the administration of the business and affairs of the Authority, subject to the direction of the Authority. He shall be charged with the management of the housing projects of the Authority.

"Section 6—Additional Duties. The 'Officers of the Authority shall perform such other duties and functions as may from time to time be required by the Authority or the by-laws or rules and regulations of the Authority.

"Section 7—Election or Appointment. * * *

"The Secretary shall be appointed by the Authority. Any person appointed to fill the office of Secretary, or any vacancy therein, shall have such term as the Authority fixes, but no commissioner of the Authority shall be eligible to this office."

By a resolution of the Board of Commissioners of the San Antonio Authority, effective August 6, 1942, Kennon was appointed Secretary and Executive Director of said Housing Authority upon a month to month basis.

Kennon served in the capacity stated under the foregoing appointment until February 20, 1943, when the then Board of Commissioners passed a resolution authorizing the Chairman of the Board to enter into a contract in writing with Kennon, employing him to serve as Secretary and Executive Director of the Housing Authority of the City of San Antonio for a period of twenty-four months from February 20, 1943, at an agreed compensation of $12,-000, payable in forty-eight semi-monthly installments of $250 each.

A contract with Kennon, in conformity with the resolution mentioned, was executed by the then Chairman of the Board.

On March 4, 1943, certain changes in the personnel of the Board of Commissioners having taken place, said Board passed a resolution in which it refused to recognize the contract with Kennon, dated February 20, 1943, and declared that all acts performed by him from and after said date were regarded by the Board of Commissioners as having been performed under the original resolution of August 6, 1942.

Subsequently, further changes in the membership of the Board took place, and on February 24, 1944, a resolution was adopted by the Commissioners discharging Kennon from his position as Secretary and Executive Director of the Housing Authority of San' Antonio and directing him to surrender and deliver to the Commissioners all property of the authority in his possession and under his control.

Appellant's primary contention here is that the position of the Secretary and Executive Director of the Housing Authority of the City of San Antonio is a "public office."

The Housing Authorities Law nowhere prescribes the term for which a person appointed as secretary and executive director of a Housing Authority shall hold the place. The length of the term of the office was consequently a matter delegated by the Legislature to the governing body of a Housing Authority, i. e., the Board of Commissioners.

■ The by-laws of the Housing Authority of the City of San Antonio, as shown by the excerpts therefrom above set out, provide that the Secretary "shall have such term as the Authority fixes." This, we take it means such term as may be fixed by simple resolution of the Board of Commissioners. If we accept the resolution of February 20, 1943, as fixing the term of office of the Secretary and Executive Secretary as two years from the date of said resolution, then like effect must be given to the resolution of March 4, 1943, whereby Kennon was again placed upon a month to month basis, and to the resolution of February 24, 1944, whereby he was discharged. This upon the principle that the Commissioners having the right to prescribe the length of the tenure of office by simple resolution, likewise possessed the power to change the length of tenure of office by simple resolution.

The situation is analogous to that of a term of office fixed by the Legislature. In Popham v. Patterson, 121 Tex. 615, 51 S.W.2d 680, 683, the Supreme Court said: "Since the office of county superintendent is purely statutory, the Legislature also has the power to either shorten or lengthen the term thereof, and make the act doing so apply to those in office at the time the act becomes effective."

■ The fact that pursuant to the resolution of February 20, 1943, the Chairman of the Board of Housing Commissioners entered into a contract with Kennon purporting to fix his tenure of office at two years can have no effect upon the situation presented, for if the position of Secretary and Executive Director be a "public of-

fice," then the fixing of the term of that office is the exercise of a function essentially legislative in character, and the body in whom this legislative discretion is vested (here the Board of Commissioners) can not by contract or barter and sale divest itself of this power. We regard the case of Crenshaw v. United States, 134 U.S. 99, 10 S.Ct. 431, 433, 33 L.Ed. 825, as being conclusive upon this point. In the case mentioned, Mr. Justice Lamar, speaking for the Supreme Court of the United States, said: "The case of Newton v. [Mahoning County] Com'rs, 100 U.S. 548 [25 L.Ed. 710], is in point. That was a controversy over the projected removal of a county seat; and the statute relied on by the objectors provided that before the seat of justice should be considered as permanently established at the town of Canfield, the citizens thereof should do certain things, all of which were admitted to have been duly done. · The objectors therefore claimed a contract right that the county-seat should remain at Canfield. This court said: 'The legislative power of a state, except so far as restrained by its own constitution, is at all times absolute with respect to all offices within its reach. It may at pleasure create or abolish them, or modify their duties. It may also shorten or lengthen the term of service. And it may increase or diminish the salary or change the mode of compensation. The police power of the states, and that with respect to municipal corporations, and to many other things that might be named, are of the same absolute character;' citing Cooley, Const. Lim. [pp.] 232, 342; Regents v. Williams, 9 Gill & J. [Md. 365], 371 [31 Am.Dec. 72]. 'In all these cases there can be no contract and no irrepealable law, because they are "governmental subjects," and hence within the category before stated. They involve public interests, and legislative acts concerning them are necessarily public laws. Every succeeding legislature possesses the same jurisdiction and power with respect to them as its predecessors. The latter have the same power of repeal and modification which the former had of enactment, —neither more nor less. All occupy, in this respect, a footing of perfect equality. This must necessarily be so, in the nature of things. It is vital to the public welfare that each one should·be able at all times to do whatever the varying circumstances and present exigencies touching the subject involved may require. A different result would be fraught with evil.' "

Appellant presents an alternative contention, based upon the proposition that the position of Secretary and Executive Director is not a public office. The distinction between a "public office" and a position held under contract of employment with the State or a political subdivision thereof is discussed in Texas Jurisprudence, Vol. 34, pp. 321–326. As stated by the authority cited: "A public office is something different from a public contract. Officers hold their positions by election or appointment and not by contract."

No recovery can be awarded appellant upon his alternative contention that he is an employee and therefore entitled to recover upon his contract. The contract upon which he sued provides for his rendering of personal services in an administrative and executive capacity to his employer, the Housing Authority. Such contracts cannot be specifically enforced in equity. 38 Tex.Jur. 733, § 57. Appellant is therefore relegated to an action for damages for breach of contract. Appellant's contract of employment with the Housing Authority clearly contemplates that appellant should·devote his entire time to the prosecution of the duties enjoined upon him by the agreement. Assuming a wrongful discharge, we think the usual measure of damages applicable in such cases would have application here. Appellant would not be entitled to recover the full amount of the compensation provided for in the contract, but would be limited to a recovery of the difference between the contract compensation and the amount he could have earned in other employment. Appellant was bound to use reasonable diligence to get other employment and to reduce his loss as far as could thus be done. Kramer v. Wolf Cigar Stores Co., 99 Tex. 597, 91 S.W. 775; 13 Tex.Jur. 109, § 34; 29 Tex. Jur. 34, § 18; 34 Tex.Jur. 395, § 43.

The evidence does not support a recovery of damages under the measure stated. In fact, the conclusion is inescapable that the case was tried below upon the "public office" theory and not as an action for damages for breach of a contract for personal services.

There being no error in the trial court's judgment an affirmance thereof will be ordered.